IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOLORES M. ISRAEL, | CIVIL ACTION NO. |
| Plaintiff, | |
| v. | |
| BABCOCK & WILCOX POWER GENERATION GROUP, INC., as Successor-in-interest to Babcock & Wilcox Company, B&W TECHNICAL SERVICES, INC., f/k/a B&W Nuclear Environmental Services, Inc., and ATLANTIC RICHFIELD COMPANY, predecessors-in-interest, successors-in-interest, subdivisions and subsidiaries, | |
| Defendants. | |

**COMPLAINT IN CIVIL ACTION - JURY TRIAL DEMANDED**

**I.**

**INTRODUCTION**

1.  Plaintiffs bring this action against Defendants seeking redress for injuries they have suffered in the past and will continue to suffer as a result of Defendants' reckless, grossly negligent and negligent operation, remediation, and/or decommissioning of two nuclear materials processing facilities located in the Borough of Apollo and in Parks Township, Pennsylvania. Throughout the operational history of these facilities, Defendants have caused the release of hazardous radioactive substances into the surrounding environment. These releases have

1

contaminated the air, soil, surface water and ground water in the surrounding communities, directly and proximately causing Plaintiffs' personal injuries.

## II.

## JURISDICTION

2.     This action arises under the United States Price Anderson Act, 42 U.S.C. §§ 2210, et seq., as hereinafter more fully appears. Section 2210(n)(2) of that Act provides an express grant of jurisdiction to the United States District Courts and grants jurisdiction to this Court to consider Plaintiffs' claims.

3.     This action arises under the United States Atomic Energy Act, 42 U.S.C. §§ 2011, et seq., and the United States Price Anderson Act, 42 U.S.C. §§ 2210, et seq., as hereinafter more fully appears. Therefore, this court also has jurisdiction over Plaintiffs' claims by virtue of 28 U.S.C. § 1331.

4.     Because this action also arises under laws of the United States regulating commerce, this court has jurisdiction over Plaintiffs' claims by virtue of 28 U.S.C. § 1337, as hereinafter more fully appears. Both the Atomic Energy Act, 42 U.S.C. §§ 2011, et seq., and the Price Anderson Act, 42 U.S.C. §§ 2210, et seq., regulate commerce in the nuclear fuels and nuclear power industry.

5.     Because Plaintiffs' state law claims arise out of the same case or controversy as their federal claims, this court has jurisdiction over those ancillary and pendent state law claims by virtue of 28 U.S.C. § 1367(a).

## III.

## VENUE

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2210(n)(2) because Plaintiffs' causes of action arose in this district and because the nuclear incidents giving rise to Plaintiffs' claims transpired in this district.

## IV.

## THE PARTIES

7. The Plaintiff Dolores M. Israel is currently living and residing in Leechburg, Pennsylvania. Dolores M. Israel has lived in Leechburg, Pennsylvania since July 1959. She previously lived in North Vandergrift, Pennsylvania since 1934. She worked and visited friends and relatives in the area throughout her life. Subsequently, Dolores M. Israel was diagnosed with breast cancer in February 23 2010. As a result of Defendants' repeated releases of hazardous radioactive substances into the area surrounding their nuclear materials processing facilities, Dolores M. Israel developed breast cancer, which disease caused her severe physical injury, pain, suffering, and mental and emotional damage.

8. The following persons are Defendants in this action:

   a. Defendant Babcock & Wilcox Power Generation Group, Inc., as successor-in-interest to Babcock & Wilcox Company, is a Delaware corporation with its principal place of business in the state of Ohio. Babcock & Wilcox, itself or through its agents, which include but are not limited to B&W Technical Services, Inc. (formerly named "B&W Nuclear Environmental Services, Inc.") and Pennsylvania Nuclear Service Operations, has been a principal operator of the nuclear materials processing facilities located in Apollo and Parks Township, Pennsylvania, from 1971 to present.

  b. B&W Technical Services, Inc. (formerly named "B&W Nuclear Environmental Services, Inc.") is a Delaware corporation headquartered in Virginia. This company has offices in the state of Pennsylvania, and conducts its affairs relevant to the Apollo and Parks Township facilities from those offices. Upon information and belief, B&W Technical Services, Inc. is currently the principal operator of the facilities in Apollo and Parks Township.

  c. Atlantic Richfield Company ("ARCO"), its predecessors-in-interest, successors-in-interest, subdivisions and subsidiaries, is a Delaware corporation with its principal place of business in the state of Illinois. In 1967, ARCO entered into an "Agreement and Plan of Reorganization" with Nuclear Materials and Equipment Corporation ("NUMEC"), the original owner and operator of the Apollo and Parks Township facilities. ARCO became the successor to NUMEC. ARCO served as principal operator of the nuclear processing facilities located in Apollo and Parks Township, Pennsylvania, from 1967 to 1971; upon information and belief, ARCO remains liable for the Parks Township shallow landfill disposal facility to the present time, and has been an active participant in the remediation and/or decommissioning of both sites.

9. At all times material hereto, each Defendant corporation, by itself or through its agents, is or has been engaged in the transporting, generating, processing, using, releasing, sale and distribution, and disposal of nuclear materials at facilities located in Apollo and Parks Township, Pennsylvania. Such facilities are, or were at times material hereto, owned by these Defendants or by their agents.

10. Plaintiff alleges that for a period of many years, either they or their Decedent was exposed to hazardous radioactive substances released by Defendants into the environment, including the air, water, and soil, of Apollo and/or Parks Township. Plaintiff alleges that she has

been exposed on numerous occasions to hazardous radioactive substances released or emanating from Defendants' facilities, and has thereby inhaled, ingested or otherwise absorbed into her body such substances. Plaintiff further alleges, and sets forth with specificity below, that she has suffered personal injuries directly and proximately caused by her exposure to hazardous radioactive substances released, emitted, or emanating from Defendants' facilities.

11. Plaintiff alleges that she was exposed to hazardous radioactive substances known to cause disease and that each exposure caused or contributed to Plaintiff's injuries. Therefore, the doctrine of joint and several liability should be extended to apply to each Defendant herein.

V.

**RELEVANT FACTS**

12. The Nuclear Materials and Equipment Corporation (NUMEC), these Defendants' predecessor in interest, was formed in the 1950's to develop the first privately owned commercial nuclear processing facility.

13. Congress opened the door to private participation in the nuclear industry in 1954, when it amended the 1946 Atomic Energy Act to eliminate the federal government's exclusive right to possess, control and regulate fissionable nuclear materials. The 1954 amendments permitted private investors to obtain licenses from the Atomic Energy Commission to transfer and receive such materials, and to manufacture, produce, transfer, acquire, possess, use, import and export nuclear materials. 42 U.S.C. §§ 2073, 2131-2134, 2136-2137.

14. In 1957, NUMEC obtained its first license to handle and utilize nuclear source material, special nuclear material, and by-product material, and subsequently became the first, and ultimately (for a time) the largest privately-owned operation for the processing and use of nuclear materials, including plutonium, uranium, strontium, cesium, and thorium.

5

15. The NUMEC operations were housed in two facilities located about 40 miles northeast of the city of Pittsburgh, Pennsylvania, one in the Borough of Apollo and one in Parks Township, Pennsylvania, near Leechburg. These facilities manufactured the fuel materials that were to be used by both commercial and government customers.

16. The Apollo facility is located in the narrow, steep-sided Kiskiminetas River Valley and is bounded on one side by the Kiskiminetas River. On the other side lies Warren Avenue and an Apollo residential neighborhood in which Plaintiffs and other residents live. Several hundred residents live within a 1000-foot semi-circle of the facility; some homes are located only about 50 feet from the site.

17. Upon information and belief, the Apollo facility was used primarily for the production of fissionable materials; these fissionable products could then be used as nuclear fuel. Specifically, enriched uranium or thorium was processed, pelletized, and loaded into fuel rods or cylinders for delivery to the customer in a form useful as a source of energy. Defendants also maintained a laundry at the Apollo facility, which was used to decontaminate clothing, military control rod mechanisms, and other items. Defendants also conducted certain waste treatment and disposal activities, including radioactive waste incineration, at the Apollo facility. In 1978, the Apollo facility ceased manufacturing high enriched uranium, and in 1984, it ceased manufacturing low enriched uranium. Plaintiffs believe that all processing activities were halted in late 1984, and that subsequent to that time, the current operators have been conducting site evaluations and remedial work.

18. The Parks Township facility is also located in the Kiskiminetas River Valley, approximately one mile from the community of Leechburg and close to the Kiskiminetas River. The residential community of Kiskimere lies to the immediate south of the site.

6

19. Upon information and belief, the Parks Township facility was at one time the largest non-governmental plutonium development and fabrication operation in the United States. This part of the NUMEC operation was used to process and fabricate plutonium and plutonium-bearing materials, to fabricate nuclear fuel, to conduct research and development activities, and to recycle, salvage and reprocess scrap materials. The Parks Township facility was also used for disposal of radioactive waste. To Plaintiffs' knowledge and belief, some or all of these activities continued to occur at the Parks Township facility until the mid-to-late 1990's.

20. In 1967, NUMECs assets and liabilities were acquired by Defendant Atlantic Richfield Company (ARCO), which formed a subsidiary called "NUMEC" to hold the licenses and operate the Apollo and Parks Township facilities. Upon information and belief, ARCO's NUMEC subsidiary retained substantially all of the officers, directors and personnel who had been employed by the original NUMEC at the time of the de facto merger. In 1971, ARCO conveyed its interest in, and the greater part of its liability for, the NUMEC facilities to the Babcock & Wilcox Power Generation Group, Inc. (f/k/a Babcock & Wilcox Company), which became the licensee. Upon information and belief, Plaintiffs contend that ARCO retains some financial liability for the Apollo and Parks Township facilities and has continued to be an active participant in the remediation and/or decommissioning activities at both facilities. Although Plaintiffs believe that the Babcock & Wilcox Power Generation Group, Inc. still holds all licenses necessary to operate the facilities, Plaintiffs also believe that B&W Technical Services, Inc., (formerly named "B&W Nuclear Environmental Services, Inc."), was most recently directing operations at the Apollo and Parks Township facilities.

21. Operations at the Apollo and Parks Township facilities have used, processed, stored and/or produced uranium, enriched uranium, plutonium, and other radioactive materials constituting source, special nuclear, or by-product materials as defined in the Atomic Energy

7

Act, 42 U.S.C. §§ 2011, et seq.  These radioactive materials, their by-products and their decay, or daughter products are highly toxic and carcinogenic.

22.    Upon information and belief, Plaintiff contends that from the time NUMEC was created in 1957 to the present, the operations conducted at the Apollo and Parks Township facilities, including the remediation and/or decommissioning operations, have generated significant amounts of substances that are highly toxic to humans and the environment.  Plaintiff further contends that throughout these facilities' operating history, each licensee/operator has caused recurrent releases of hazardous radioactive materials into the environment, in complete disregard for applicable law, and for the health and safety of the surrounding communities and the local environment.  These reckless, negligent and grossly negligent releases occurred in various ways, including the discharge of hazardous radioactive materials into public water bodies, the emission of hazardous radioactive materials from facility stacks, the exposure of workers, who could then spread contamination outside the worksite, and improper disposal of materials which eventually leaked from storage tanks and other disposal systems.

23.    These reckless, negligent and grossly negligent releases have in turn resulted in the exposure of persons living and working in the area to hazardous radioactive materials.  Because of the long half-life of the radioactive substances involved, persons living downwind from the facilities have also been exposed to these dangerous substances.

24.    Upon information and belief, the substances to which Plaintiff and her communities were exposed include, but are not limited to the natural forms and various isotopes of cesium, strontium, technesium-99, thorium, americium, iridium, iodine, cobalt, radium, plutonium, and uranium.  Some of these substances were used in the actual conduct of Defendants' operations, and some were by-products or decay ("daughter") products.

25. Upon information and belief, Plaintiff contends that these facilities were never operated in compliance with applicable state, local and federal laws. Further, Plaintiff contends that from the beginning, each Defendant engaged in a pattern of negligent, grossly negligent and reckless behavior in their operation, remediation and/or decommissioning of the facilities, and that this pattern of behavior was implemented with full knowledge of the dangers associated with the hazardous radioactive substances involved in their operations. Common among Defendants' transgressions was their practice of routinely exceeding federal stack emission regulations, their violation of Pennsylvania regulations governing the disposal of wastes into surface water bodies, their failure to maintain equipment in proper working order, their failure to maintain adequate monitoring systems, and the constantly recurring exposure of their workers to unlawful and hazardous concentrations of radioactive materials.

26. While conducting operations in a manner in clear violation of license conditions, other applicable laws, and common law duties, Defendants also sought to prevent details about their operations, and about the hazards of their operations, from reaching workers, Plaintiff, or the surrounding community. During all relevant times, Defendants or their predecessors were aware of the fact that they were releasing hazardous radioactive materials into the air, water and soil. Defendants opted not to take sufficient remedial measures to eliminate or abate the emissions and releases, manifesting a casual attitude towards environmental and health safety, even though they were aware of the health risks posed to Plaintiff by such releases. At the same time, Defendants withheld information about the dangers from Plaintiff and the community, and in some cases took steps to prevent public regulatory agencies from disclosing non-trade secret documents to the public.

27. Defendants' failure to inform Plaintiff of the health risks associated with the substances emitted from Defendants' facilities resulted in Plaintiff being deprived of information crucial to their ability to limit their exposure or take other appropriate action.

28. With full knowledge of the environmental and health hazards associated with the processing of nuclear fuel components, Defendants' predecessors chose to establish the first and largest privately-owned commercial nuclear processing facility in the midst of the communities of Apollo and Parks Township, with facilities being located as little as 50 feet from homes. During the more than 30 years of the facilities' existence, each and every operator has conducted operations in callous disregard for health, safety and legal or regulatory mandates. This reckless, negligent, and grossly negligent conduct has resulted in the recurring release of hazardous radioactive substances into the air, soil and water of Plaintiff's communities. Defendants' failure to reveal the fact of the releases or the hazards to which the citizens of the Kiskiminetas Valley were exposed prevented Plaintiff from taking steps to prevent the profound injuries that have been directly and proximately caused by Defendants' conduct. As a result, Plaintiff has suffered injury.

## VI.

## CAUSES OF ACTION

### Count One

### CLAIMS ARISING UNDER THE PRICE ANDERSON ACT,

### 42 U.S.C. §§ 2210, et seq.

29. Plaintiff repeats the allegations contained in Paragraphs 1 through 28 and incorporate them by reference as if fully set forth herein.

30. Plaintiff in this case asserts numerous state common law claims against Defendants for injuries suffered. See ¶¶ 35 through 80. Because these Defendants are regulated by the terms of

the federal Price Anderson Act, as hereinafter more fully appears, those state law claims are statutorily deemed to arise under the federal Price Anderson Act, thereby stating a federal cause of action. 42 U.S.C. §§ 2014(hh), 2210.

31.   Defendants in this action have, at times material to this action, conducted various activities involving nuclear materials. These activities include collecting and processing uranium, plutonium, thorium and other radioactive substances. They are therefore engaged in the development, use and control of atomic energy within the terms of the Atomic Energy Act, 42 U.S.C. §§ 2011, et. seq. A consequence of these activities is the requirement that Defendants obtain a federal license authorizing their operations involving nuclear materials. 42 U.S.C. §§ 22l0, 2073, 2092, 2093, 2111. Defendants or their predecessors and/or agents have at all relevant times held such federal licenses.

32.   In 1957, Congress amended the Atomic Energy Act to implement its policy to foster private sector participation in the nuclear energy industry. These 1957 amendments became known as the Price Anderson Act. The uranium, plutonium, thorium and other radioactive substances possessed, processed and stored by Defendants at the Apollo and Parks Township facilities are nuclear by-product materials, special nuclear materials anti/or source materials. 42 U.S.C. §§ 2014(e), 2014(z), 2014(aa). Any release of these by-product, special nuclear, or source materials causing bodily injury, sickness, disease, death, loss or damage to property, or loss of use of property constitutes a "nuclear incident" under the terms of the Price Anderson Act. 42 U.S.C. § 2014(q). Plaintiff in this case contends that Defendants have operated the facilities in Apollo and Parks Township in a negligent, grossly negligent, and reckless fashion, and have as a consequence caused the frequent release of by-product, special nuclear, and/or source materials into the surrounding communities, thereby causing a "nuclear incident" or series of "nuclear incidents" under the Price Anderson Act.

33. Plaintiff further contends that these releases have exposed Plaintiff to highly dangerous materials. Plaintiff has sustained serious injuries as a direct and proximate result of these exposures. Plaintiff has suffered bodily injury, sickness, disease and/or death as a direct and proximate result of their exposures. Plaintiff's cause of action therefore asserts legal liability based upon a "nuclear incident," or series of such incidents, and is consequently a "public liability action" within the terms of the Price Anderson Act. 42 U.S.C. §§ 2014(w), 2014(hh).

34. The Price Anderson Act further provides that in "public liability actions" arising under the Act, the law of the state in which the "nuclear incident" occurred shall provide the substantive rules of decision unless such law is inconsistent with the Act. The causes of action enumerated in ¶¶ 35 through 80 exist by virtue of the laws of the state of Pennsylvania, in which the "nuclear incident" occurred, and are therefore properly before this court as both federal causes of action arising under the Price Anderson Act and as state law claims ancillary or pendent to the federal claims. 42 U.S.C. §§ 2014(hh), 2210.

## Count Two

### NEGLIGENCE

35. Plaintiff repeats the allegations contained in Paragraphs 1 through 34 and incorporates them by reference as if fully set forth herein.

36. Defendants owed to Plaintiff a duty of due care which could only be satisfied by the legal, safe, and proper generation, use, management, storage and disposal of the hazardous radioactive substances in Defendants' possession. Defendants had a specific duty to prevent the discharge or release of such substances which might harm Plaintiff. Defendants also had a specific duty to warn or notify Plaintiff of the potential hazards of exposure to hazardous radioactive substances and to warn or notify Plaintiff of the fact that discharges or releases of these substances had occurred, and were likely to occur in the future.

37.     Further, Defendants had a duty to comply with applicable state, federal, and local governmental laws, regulations, and guidelines applicable to persons generating, managing, storing, using, and disposing of hazardous radioactive substances.

38.     Defendants breached these duties by their negligent, grossly negligent, and reckless generation, management, storage, use, and disposal of hazardous radioactive substances and their negligent, grossly negligent, and reckless conduct of operations at the Apollo and Parks facilities, including remediation and decommissioning activities.  Such conduct was in utter non-compliance with applicable federal, state and local laws, regulations, and guidelines. Defendants' reckless, grossly negligent, negligent, and illegal conduct resulted in the dangerous release of hazardous radioactive substances into the communities surrounding the Apollo and Parks Township facilities.  These actual and continued releases have subjected Plaintiff to an unreasonable risk of harm, and to actual injuries her person.  Defendants also failed to warn Plaintiff of the actual and threatened releases of such substances and of the reasonably foreseeable effects of such releases, an omission that was reckless, grossly negligent, and/or negligent.  Finally, Defendants failed to act to prevent their releases from harming Plaintiff.

39.     The operators of the NUMEC operations knew about the hazards associated with nuclear materials processing operations.  Additionally, the legislative history of the Price Anderson Act, which was passed with the active participation of private companies involved in the nuclear power industry, is rife with references to the extreme consequences that could be expected in the event of a nuclear accident.  Indeed, the gravity of such consequences was a major contributing factor to the passage of the Price Anderson Act.  These Defendants clearly knew or should have known that their generation, management, storage, use, disposal, releases, or discharges of hazardous radioactive substances at the Apollo and Parks Township facilities would result in actual injuries and increased risks to the public living near the facilities.

40. Defendants' negligence was a direct and proximate cause of Plaintiff's injuries. Plaintiff is entitled to recover damages for such injuries.

41. All injuries and damages to Plaintiff are substantial. Many of the injuries to the Plaintiff, however, are as yet undetermined in magnitude. The amount of damages for some of the injuries will be established at the time of trial.

## Count Three

## NEGLIGENCE PER SE

42. Plaintiff repeats the allegations contained in Paragraphs 1 through 41 and incorporate them by reference as if fully set forth herein.

43. Plaintiff contends that throughout their history, the facilities at Apollo and Parks Township were operated in non-compliance with applicable federal, state and local laws and regulations promulgated thereunder. Applicable statutes include but are not limited to the Atomic Energy Act, 42 U.S.C. §§ 2011, et. seq., regulations issued thereunder in 10 C.F.R. Parts 20, 30, 40, 70, specifically including but not limited to 10 C.F.R. 20.103(a), 10 C.F.R. 20.106(b) and (g), 10 C.F.R. 20.201(b), 10 C.F.R. 20.203(d), 10 C.F.R. 20.206(a), 10 C.F.R. 20.401(b), 10 C.F.R. 20.405(a), (b), 10 C.F.R. 407(b)(1), (2), 10 C.F.R. 30.3, 10 C.FR. 70.24, licenses issued thereunder, including but not limited to license #SNM-145, #SNM-414, #SMB-502, #37-07031-01, #37-04456-01, #37- 04456-03, #37-04456-04, #37-04456-05, #C-4834, #C-3762; the Price Anderson Act, 42 U.S.C. §§ 2210, et seq., and regulations issued thereunder; the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601, 9603, 9611(g), and regulations issued thereunder; the Toxic Substances and Control Act (TSCA), 15 U.S.C. §§ 2601, 2607(e), and regulations issued thereunder; the Resource Conservation and Recovery Act (RCRA) 42 U.S.C. §§ 6901, 6924(d), 6925, and regulations issued thereunder; the Emergency Planning and Community Right to Know Act (EPCRTKA) 42

14

U.S.C. §§ 11001, 11023, and regulations issued thereunder; and applicable Pennsylvania air and water quality protection and waste disposal laws.

44.     These violations of applicable state, federal and local laws, regulations and guidelines were a direct and proximate cause of injuries to Plaintiff.  The increased risk of harm and the actual present harm to them are precisely the types of injuries these applicable laws were designed to prevent.  Violation of these statutes therefore constitutes per se negligence.

45.     All injuries and damages to Plaintiff are substantial.  Many of the injuries to the Plaintiff, however, are as yet undetermined in magnitude.  The amount of damages for some of the injuries will be established at the time of trial.

## Count Four

## ABSOLUTE OR STRICT LIABILITY

46.     Plaintiffs repeat the allegations contained in Paragraphs 1 through 45 and incorporate them by reference as if fully set forth herein.

47.     The conduct of nuclear processing activities, including remediation and decommissioning activities, poses significant risk of harm to persons living and working in the vicinity of the operation.  The consequences of nuclear accidents or incidents to health, property and the environment may be extremely dire.  Nor is it possible to eliminate the risk in the vicinity of such operations by taking reasonable precautions.  Finally, processing nuclear materials has never been a matter of common usage; indeed, prior to 1957, private operators were not permitted to engage in such activities at all.  The conduct of nuclear processing activities at Defendants' Apollo and Parks Township operations clearly constituted abnormally dangerous activities.

48.     In addition, with the knowledge of the environmental and health hazards associated with the processing of nuclear fuel components, Defendants' predecessors chose to establish the first

15

and largest privately-owned commercial nuclear processing facility in the midst of the communities of Apollo and Parks Township, with facilities being located as little as 50 feet from homes. Although Plaintiffs maintain the Defendants' activities were abnormally dangerous per se, the location of such activities in a well-populated area such as Apollo or Parks Township would independently have rendered them abnormally dangerous.

49. As a direct and proximate result of the Defendants' collection, handling, processing, storage and disposal of hazardous radioactive substances at the Apollo and Parks Township facilities, there have been releases of such substances into the environment, thereby injuring Plaintiff, which injuries include actual present harm and increased risks of harm to her person. These injuries constitute the type of harm the possibility of which made the Defendants' activities abnormally dangerous.

50. Defendants are therefore strictly liable to Plaintiff for all damages which have resulted and which will continue to result from the collection, handling, processing, storage and disposal of hazardous radioactive substances at the Apollo and Parks Township facilities.

51. All injuries and damages to Plaintiff are substantial; however, many of the injuries to the Plaintiff are as yet undetermined in magnitude. The amount of damages for some of the injuries will be established at the time of trial.

### Count Five

### CIVIL CONSPIRACY

52. Plaintiff repeats the allegations contained in Paragraphs 1 through 51 and incorporate them by reference as if fully set forth herein.

53. Some or all of the Defendants, their officers and employees, and other persons and entities unknown to Plaintiff, at various times, acted together with the common purpose of

conducting operations at the nuclear processing facilities in Apollo and Parks Township in an unlawful manner, and with the further common purpose of unlawfully concealing operations at such facilities from the public and of concealing the fact that releases of radiation and hazardous radioactive materials were occurring.

54.    In furtherance of this conspiracy, Defendants have taken overt steps to conceal the nature of plant operations from the public and from regulators, and have failed in their legal duty to disclose the fact that releases of radiation and hazardous radioactive materials have occurred. Such concealment is a violation of law, and a violation of Defendants' duty to Plaintiff as members of the community.

55.    In furtherance of this conspiracy, Defendants have also falsely and fraudulently represented the nature and extent of releases of hazardous radioactive substances from their Apollo and Parks Township facilities, have misrepresented the health and environmental risks associated with such releases and with the operations of Defendants' facilities, and have concealed information known to Defendants about the health risks and the status of knowledge regarding the dangerous properties of the hazardous radioactive substances used, processed, generated and released from the facilities.

56.    As a direct and proximate result of Defendants' conspiracy, Plaintiff has suffered injuries and are entitled to recover damages for such injuries.

57.    All injuries and damages to Plaintiff are substantial. Many of the injuries to the Plaintiff, however, are as yet undetermined in magnitude. The amount of damages for some of the injuries will be established at the time of trial.

## VII.

## **DAMAGES**

62. As a direct and proximate result of Defendants' tortious conduct as alleged above, Plaintiff has been injured by exposure to hazardous radioactive substances. Plaintiff has been damaged in the following particulars and seeks to recover therefor:

    a. Plaintiff has suffered and will continue to suffer great physical pain and mental anguish and will continue to suffer great pain and anguish throughout their lifetime;

    b. Plaintiff has incurred hospital and/or medical and/or pharmaceutical and/or other expenses and will continue to incur such expenses in the future due to the permanent nature of her injuries resulting from exposure to hazardous radioactive substances, from which injuries she now suffers and will continue to suffer in the future;

    c. Plaintiff suffers a physical impairment at this time and will continue to suffer this impairment in the future due to her injuries resulting from exposure to hazardous radioactive substances;

    d. Plaintiff suffers a permanent partial disability at this time and will become permanently and totally disabled in the future due to the progressive character of injuries resulting from exposure to hazardous radioactive substances;

    e. Plaintiffs has suffered a progressive loss of wages and earning capacity and will continue to suffer a loss of earning capacity and wages throughout their lifetimes;

    f. Plaintiff requires or will require domestic help and nursing care due to her disabilities and has been or will be required to pay for such domestic help and nursing services;

    g. Prior to the onset of their symptoms, Plaintiff was extremely active and participated in numerous hobbies and activities, and as a result of her injuries, Plaintiff

has been and will be prevented from engaging in some of said activities which were normal to them prior to developing symptoms and injuries resulting from exposure to hazardous radioactive substances.  Plaintiff has been and will otherwise be prevented from participating in and enjoying the benefits of a full and complete life;

    h.    Because Defendants' conduct was grossly negligent and reckless, Plaintiffs seek punitive damages

63.    The conduct of Defendants, as alleged herein, was a direct, proximate and producing cause of the damages resulting from Plaintiff's injuries, and of the following general and special damages that Plaintiff has sustained:

    a.    Damages to punish Defendants for proximately causing Plaintiff's injuries;

    b.    Damages for the physical impairment suffered by Plaintiff;

    c.    Damages for the disfigurement suffered by Plaintiff;

    d.    Damages for reasonable and necessary medical expenses incurred by Plaintiff;

    e.    Damages for Plaintiff's lost earnings and net accumulations;

## VIII.

## PRAYER FOR RELIEF

64.    WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against the Defendants, and each of them, jointly and severally, for general damages, special damages, for punitive and exemplary damages, for her attorneys' fees and costs expended herein, for pre- and post-judgment interest, and for such other relief as may be allowed at law or in equity. PLAINTIFF DEMANDS A TRIAL BY JURY AS TO ALL ISSUES TRIABLE BY A JURY RAISED HEREIN.

                                                                              ____/s/ Jeffrey V. Mansell_____
                                                                              Bruce E. Mattock (#43237)
                                                                              David B. Rodes (#47819)

Jason T. Shipp (#87471)
Jeffrey V. Mansell (#202937)
GOLDBERG, PERSKY & WHITE, P.C.
1030 Fifth Avenue
Pittsburgh, PA 15219
(412) 471-3980 (phone)
(412) 471-8308 (facsimile)

Fidelma L. Fitzpatrick, Esq.
Jonathan D. Orent, Esq.
Michaela Shea McInnis, Esq.
MOTLEY RICE, LLC
321 South Main Street
Providence, RI 02903
(401) 457-7723 (phone)
(401) 457 7708 (facsimile)

Attorneys for Plaintiffs